## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| **MICHAEL J. Z.,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **No. 19 C 2681** |
| | ) | |
| **ANDREW M. SAUL,** | ) | **Magistrate Judge Finnegan** |
| **Commissioner of Social Security,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## ORDER

Plaintiff Michael J. Z. seeks to overturn the final decision of the Commissioner of Social Security ("Commissioner") denying his application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act. The parties consented to the jurisdiction of the United States Magistrate Judge pursuant to 28 U.S.C. § 636(c), and Plaintiff filed a brief explaining why the Commissioner's decision should be reversed or the case remanded. The Commissioner responded with a competing motion for summary judgment in support of affirming the decision. After careful review of the record and the parties' respective arguments, the Court agrees with Plaintiff that the case must be remanded for further proceedings.

## BACKGROUND

Plaintiff first applied for DIB on May 9, 2013, alleging disability since March 22, 2012 due to left cubital tunnel, left shoulder impairment with arthroscopy, ulnar neuritis of the left hand, a history of ulcerative colitis, and a history of asthma. (R. 71, 73). Administrative law judge John K. Kraybill denied the claim on October 3, 2014, finding that Plaintiff was capable of performing sedentary jobs available in significant numbers in

the national economy.[1]  (R. 68-85).  Plaintiff did not appeal that decision but filed a new application for DIB on December 4, 2015, alleging disability from the same onset date due to complex regional pain syndrome ("CRPS"); left shoulder injury; left arm injury; sleep disturbance; swelling of the left wrist, fingers, and forearm; heat in the left arm; permanent numbness and tingling in the fingers of the left hand; dizziness and unsteadiness; poor left hand grip; and right leg numbness.  (R. 195, 218).

Born in January 1973, Plaintiff was 39 years old as of the alleged disability onset date and 43 years old as of his June 30, 2016 date last insured ("DLI"), making him at all relevant times a younger individual.  (R. 245); 20 C.F.R. § 404.1563(c).  He has a high school diploma and spent approximately 12 years working in multiple warehouse positions from 1994 to March 2012.  He also worked for 9 months as a rural mail carrier in 2006.  (R. 39-42, 242, 308).  On March 22, 2012, Plaintiff hit his left (non-dominant) elbow on a railing while at work.  He then experienced shooting pain through his arm and shoulder as he lifted a 60-pound item.  (R. 325, 344).  Plaintiff was diagnosed with CRPS of the left arm and underwent several treatments including physical therapy, injections, a left ulnar nerve decompression, and a left subpectoral biceps tenodesis and subacromial decompression.  These measures did not resolve the CRPS.  A few months after the injury, the employer's workers' compensation insurance carrier placed Plaintiff for alternative work at the Salvation Army and a nursing home.  (R. 650).  These were unsuccessful work attempts and Plaintiff has not engaged in any other employment since the March 22, 2012 injury date.

---

[1]      Plaintiff waived his right to personally appear and testify before administrative law judge Kraybill.  (R. 71).

The Social Security Administration denied Plaintiff's application initially on February 25, 2016, and again upon reconsideration on July 20, 2016. (R. 86-116). Plaintiff filed a timely request for a hearing and appeared before administrative law judge Diane S. Davis (the "ALJ") on April 4, 2018. (R. 35). The ALJ heard testimony from Plaintiff, who was represented by counsel, and from vocational expert Sara E. Gibson (the "VE"). (R. 35-67). On July 12, 2018, the ALJ found that Plaintiff's CRPS of the left arm, brought on by left cubital tunnel syndrome, and left shoulder impairment status-post surgery are severe impairments, but they do not meet or equal any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. 15-16). After reviewing the medical and testimonial evidence, the ALJ concluded that Plaintiff retains the residual functional capacity ("RFC") to perform sedentary work with: frequent or occasional lifting and carrying of 10 pounds; sitting and standing for 2 hours at a time, and for 6 hours total in an 8-hour workday; no restrictions using the right, dominant arm; occasional reaching overhead and pushing/pulling with the left arm; frequent reaching in all other directions with the left arm; frequent handling, fingering, and feeling with the left arm; frequent crouching and crawling; occasional climbing of ramps and stairs; no climbing of ladders, ropes, and scaffolds; and no work at unprotected heights. The ALJ also found that Plaintiff can tolerate concentrated exposure to moving mechanical parts; and frequent exposure to operating motor vehicles, humidity, wetness, pulmonary irritants, extreme heat and cold, and vibration. (R. 16-24).

The ALJ accepted the VE's testimony that a person with Plaintiff's background and RFC can perform jobs available in significant numbers in the national economy, including packer, assembler, or inspector. (R. 24-25). As a result, the ALJ found that Plaintiff was

not disabled at any time from the March 22, 2012 alleged onset date through the June 30, 2016 DLI.  (R. 25-26).  The Appeals Council denied Plaintiff's request for review (R. 1-6), leaving the ALJ's decision as the final decision of the Commissioner and, therefore, reviewable by this Court under 42 U.S.C. § 405(g).  *See Haynes v. Barnhart*, 416 F.3d 621, 626 (7th Cir. 2005).

In support of his request for reversal or remand, Plaintiff argues that the ALJ: (1) erred in rejecting the opinions of his treating physician Anthony Fernandez, M.D.; (2) failed to properly consider his difficulties with fatigue, medication side-effects, and meralgia paresthetica[2] in determining his RFC; and (3) erred in discounting his statements regarding the limiting effects of his symptoms.  For reasons discussed in this opinion, the Court agrees with Plaintiff that the case must be remanded for further consideration of Dr. Fernandez's opinions.

## DISCUSSION

### A.    Standard of Review

Judicial review of the Commissioner's final decision is authorized by 42 U.S.C. § 405(g) of the Social Security Act (the "SSA").  In reviewing this decision, the court may not engage in its own analysis of whether Plaintiff is severely impaired as defined by the Social Security regulations.  *Young v. Barnhart*, 362 F.3d 995, 1001 (7th Cir. 2004).  Nor may it "'displace the ALJ's judgment by reconsidering facts or evidence or making credibility determinations.'"  *Castile v. Astrue*, 617 F.3d 923, 926 (7th Cir. 2010) (quoting *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007)).  The court "will reverse an ALJ's

---

[2]    Meralgia paresthetica is "a condition characterized by tingling, numbness and burning pain in [the] outer thigh" caused by "compression of the nerve that supplies sensation to the skin surface of [the] thigh." (https://www.mayoclinic.org/diseases-conditions/meralgia-paresthetica/symptoms-causes/syc-20355635, last visited January 19, 2021).

determination only when it is not supported by substantial evidence, meaning 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Pepper v. Colvin*, 712 F.3d 351, 361-62 (7th Cir. 2013) (quoting *McKinzey v. Astrue*, 641 F.3d 884, 889 (7th Cir. 2011)).

In making its determination, the court must "look to whether the ALJ built an 'accurate and logical bridge' from the evidence to [his] conclusion that the claimant is not disabled." *Simila v. Astrue*, 573 F.3d 503, 513 (7th Cir. 2009) (quoting *Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008)). The ALJ need not, however, "'provide a complete written evaluation of every piece of testimony and evidence.'" *Pepper*, 712 F.3d at 362 (quoting *Schmidt v. Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005) (internal citations and quotation marks omitted)). Where the Commissioner's decision "'lacks evidentiary support or is so poorly articulated as to prevent meaningful review,' a remand is required." *Hopgood ex rel. L.G. v. Astrue*, 578 F.3d 696, 698 (7th Cir. 2009) (quoting *Steele v. Barnhart*, 290 F.3d 936, 940 (7th Cir. 2002)).

**B.    Five-Step Inquiry**

To recover disability benefits under the SSA, a claimant must establish that he is disabled within the meaning of the SSA. *Snedden v. Colvin*, No. 14 C 9038, 2016 WL 792301, at *6 (N.D. Ill. Feb. 29, 2016). A claimant is disabled if he is unable to perform "any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to law for a continuous period of not less than 12 months." 20 C.F.R. § 404.1505(a). In determining whether a claimant suffers from a disability, an ALJ must conduct a standard five-step inquiry, which involves analyzing: "(1) whether the claimant

is currently employed; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment is one that the Commissioner considers conclusively disabling; (4) if the claimant does not have a conclusively disabling impairment, whether [s]he can perform her past relevant work; and (5) whether the claimant is capable of performing any work in the national economy." *Kastner v. Astrue*, 697 F.3d 642, 646 (7th Cir. 2012) (citing 20 C.F.R. § 404.1520). If the claimant meets his burden of proof at steps one through four, the burden shifts to the Commissioner at step five. *Moore v. Astrue*, 851 F. Supp. 2d 1131, 1139-40 (N.D. Ill. 2012).

## C. Analysis

### 1. Dr. Fernandez' Opinion

Plaintiff argues that the case must be reversed or remanded because the ALJ erred in affording only little weight to the opinions from his treating family physician Dr. Anthony Fernandez. (Doc. 12, at 6). A treating source opinion is entitled to controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in the record. 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2); see *Scott v. Astrue*, 647 F.3d 734, 739 (7th Cir. 2011); *Campbell v. Astrue*, 627 F.3d 299, 306 (7th Cir. 2010). If the opinion is contradicted by other evidence or is internally inconsistent, the ALJ may discount it so long as she provides an adequate explanation for doing so. *Punzio v. Astrue*, 630 F.3d 704, 710 (7th Cir. 2011); *Schaaf v. Astrue*, 602 F.3d 869, 875 (7th Cir. 2010); *Schmidt v. Astrue*, 496 F.3d 833, 842 (7th Cir. 2007). That is to say, the ALJ must offer "good reasons" for discounting a treating physician's opinion, *Scott*, 647 F.3d at 739, and then determine what weight to give it considering (1) the length of the treatment relationship

6

and frequency of examination, (2) the nature and extent of the treatment relationship, (3) the degree to which the opinion is supported by medical signs and laboratory findings, (4) the consistency of the opinion with the record as a whole, (5) whether the opinion was from a specialist, and (6) other factors brought to the attention of the ALJ. 20 C.F.R. § 404.1527(c)(2)-(6); 20 C.F.R. § 416.927(c)(2)-(6); see *Simila*, 573 F.3d at 515.

Dr. Fernandez treated Plaintiff from at least March 22, 2012 to March 2018 and provided several opinions regarding Plaintiff's functioning during that period. On September 5, 2013, Dr. Fernandez completed an Attending Physician's Statement of Functionality at the request of Plaintiff's employer's insurance company. Dr. Fernandez opined that due to Plaintiff's CRPS, he could never lift or carry objects with his left hand, never reach with the left arm (including above shoulder, at waist level, or below waist level), and never finger or handle with his left hand. Plaintiff had no limitations related to his right arm. (R. 793). On April 8, 2016, Dr. Fernandez submitted a written narrative describing Plaintiff's treatment history and struggles with CRPS of the left arm. (R. 622-23). He opined that Plaintiff is unable to lift/carry more than 5 pounds and cannot do so repeatedly. The pain interferes with Plaintiff's sleep and his narcotic medications exacerbate his fatigue and cause difficulties with processing and remembering information. As a result, Dr. Fernandez stated that Plaintiff "cannot tolerate a full work day or week." (R. 623).

In a physical RFC assessment completed shortly thereafter on April 14, 2016, Dr. Fernandez reiterated that Plaintiff suffers from severe left hand pain and weakness, mental confusion, and fatigue due to his CRPS. (R. 624). The pain, which occurs even with light touch, is constant, sharp, and burning, and Plaintiff experiences exacerbations

several times per day. He also has confusion and grogginess from his narcotic medication and gabapentin. (*Id.*). Dr. Fernandez opined that Plaintiff can occasionally lift and carry less than 5 pounds and never lift and carry more than that. (R. 624-25). In addition, Plaintiff cannot walk one city block or more without rest or severe pain, though he can walk one block or more on rough or uneven ground and climb steps without use of a handrail at a reasonable pace despite "sometimes" having problems with balance, stooping, crouching, and bending. (R. 625).

Dr. Fernandez stated that Plaintiff must lie down for 2-3 hours per 8-hour workday, and lie down for 2 hours at a time before needing to sit up, stand or walk around. He can sit for about 1 hour and stand and walk for less than 1 hour in an 8-hour workday, and he needs unscheduled breaks 2-3 times per day lasting 60 minutes. (R. 625-26). Plaintiff has no limits in using his right hand and arm but can spend only 10% of the workday grasping, turning and twisting objects; doing fine manipulation; and reaching with his left hand and arm. He cannot push and pull arm or leg controls for 6 or more hours in a workday, nor can he climb ladders, ropes or scaffolds. According to Dr. Fernandez, pain and stress would constantly interfere with Plaintiff's ability to sustain attention and concentration needed to perform simple work tasks throughout the day. (R. 626). As a result of difficulties with memory lapses, Plaintiff would be off task 30% of the workday; would be absent from work 5 days or more per month; and would be unable to complete an 8-hour workday 5 days or more per month. (R. 626-27). Dr. Fernandez indicated that this assessment was based on physical therapy reports, Plaintiff's history and medical file, progress and office notes, X-rays, and consultative medical opinions. (R. 627).

A year and a half later, on November 6, 2017, Dr. Fernandez submitted another Attending Physician's Statement to the employer's insurance company. He stated that Plaintiff's CRPS of the left arm and torn labrum/biceps in the left arm cause severe pain and decreased range of motion, leaving Plaintiff unable to lift or use the arm consistently. (R. 760). Plaintiff's current treatment plan included avoidance of painful stimuli and pain medications including Neurontin and Norco (a narcotic). Dr. Fernandez indicated that Plaintiff will need lifelong treatment for his conditions, and that his associated restrictions are permanent. (R. 760-61). Plaintiff cannot repetitively lift for more than 5 minutes at a time and suffers from severe fatigue. (R. 761). In a narrative attachment, Dr. Fernandez stated that there had been no change in Plaintiff's condition since he wrote his previous opinion in April 2016. Though Plaintiff can sit, walk, and stand, he is unable to do so for any length of time because "he lacks the stamina needed due to the intolerable pain of the CRPS." (R. 762). He cannot use his left arm for lifting, fine manipulation, grasping, or reaching due to CRPS and fatigue. Though he can occasionally drive, such as taking his daughter to and from school, extreme fatigue leaves him unable to sustain repetitive activity and he needs several naps throughout the day. Plaintiff also has difficulty concentrating and must "rest even with the simplest of daily tasks." (*Id.*).

In affording Dr. Fernandez's opinions little weight, the ALJ first stated that portions of his April 14, 2016 RFC assessment were inconsistent. The only example the ALJ provided was that Dr. Fernandez answered "no" to the question whether Plaintiff can walk "one city block or more without rest or severe pain," but "yes" to the question about walking "one block or more on rough or uneven ground." (R. 22, 625). Plaintiff says these answers are consistent because only one of the questions contemplates walking without

severe pain or a need to rest.  (Doc. 12, at 7).  The Commissioner focuses on the nature of the walking surface and argues it was inconsistent for Dr. Fernandez to find Plaintiff able to walk on rough or uneven ground but not a regular city street.  (Doc. 20, at 10). Since the ALJ did not articulate the basis for her finding, she did not build an accurate and logical bridge from the evidence to her conclusion that Dr. Fernandez's assessments contained inconsistencies.

Another reason the ALJ provided for discounting Dr. Fernandez's opinions was that he "included no accompanying narration to support his findings."  (R. 22).  This is not accurate, as Dr. Fernandez provided detailed narratives on April 8, 2016 and November 6, 2017 in support of his opinions.  (R. 622-23, 762).  The April 2016 narrative in particular discusses Plaintiff's course of treatment and states that Dr. Fernandez, who had treated Plaintiff for 6 years, "can attest that he suffers severely from CRPS . . . where even slight touch produces severe burning neuropathic pain."  (R. 623).  Dr. Fernandez further explained that "many movements or lifting with [Plaintiff's] left hand" cause pain, and that the pain interferes with Plaintiff's sleep.  This leads to "fatigue" and "difficulty concentrating," which is then exacerbated by his use of "narcotic pain medications."  (*Id.*). The Commissioner suggests that the ALJ's observations about the lack of a narrative related specifically to the questions about walking a city block and on uneven surfaces. (Doc. 20, at 10).  The RFC form, however, does not request any such narrative.  (R. 625). The Commissioner also claims the ALJ rejected Dr. Fernandez's narratives because they "speak[] . . . in generalities."  (Doc. 20, at 10).  Yet the ALJ made no such assertion in the decision.  *Roddy v. Astrue*, 705 F.3d 631, 637 (7th Cir. 2013) (the Commissioner cannot defend the ALJ's decision using a rationale the ALJ did not employ).

The ALJ's additional rationales for rejecting Dr. Fernandez's opinions are likewise poorly developed and cursory. Specifically, the ALJ stated: "[Dr. Fernandez's] own treatment notes do not support such conclusions, with limited finding from the physical exams. The overall record does not support such conclusions. He appears to have uncritically accepted the claimant's subjective complaints and did not support these findings with citations to the evidence or with adequate explanation." (R. 22). In making this determination, the ALJ failed to identify any specific findings from Dr. Fernandez's physical exams that purportedly undermine his assessments. Plaintiff routinely complained of left arm pain from the March 22, 2012 injury date through his surgeries in 2013 (May 2, 2013 for the ulnar nerve decompression of the left elbow, September 6, 2013 for the left shoulder surgery). The ALJ focuses on the fact that post-surgery notes reflect good recovery with full range of motion in the repaired joints. (R. 19-20). But Plaintiff continued to complain of CRPS pain, and exams routinely showed tenderness to light sensation, decreased range of motion, and reduced grip strength through 2017. (R. 395, 401, 412, 418, 680, 706, 712, 716, 755). There is also evidence that Plaintiff experienced worsening pain in early 2016. (R. 679). The ALJ did not explain why these symptoms were inconsistent with Dr. Fernandez's findings, or articulate how they demonstrate that he uncritically accepted Plaintiff's subjective complaints about CRPS pain. Notably, Plaintiff developed problems with his right shoulder in August 2016, which Dr. Fernandez attributed to overuse of the arm to compensate for CRPS in the left arm. (R. 723-24) (indicating that Plaintiff uses his right arm "almost exclusively").

Rather than rely on Dr. Fernandez's longitudinal assessments of Plaintiff's CRPS, the ALJ gave significant weight to a Medical Source Statement provided by Laura M.

Rausch, D.O. on July 1, 2014 at the request of the Social Security Administration. Dr. Rausch never examined Plaintiff but she opined that he can: occasionally and frequently lift and carry up to 10 pounds; never lift and carry above 10 pounds; sit, stand, and walk for 2 hours at a time and 6 hours total in an 8-hour workday; occasionally reach overhead and push/pull with the left hand; frequently reach in all other directions, handle, finger, and feel with the left hand; occasionally climb stairs and ramps; never climb ladders or scaffolds; frequently crouch and crawl; continuously balance, stoop, and kneel; never work at unprotected heights; frequently operate a motor vehicle; shop and travel without a companion; walk a block on uneven or rough surfaces; use public transportation; make simple meals; and care for personal hygiene. (R. 23, 1192-97).

As Plaintiff notes, Dr. Rausch did not have access to his complete medical record when she made this assessment, including any treatment notes after January 2014. (R. 85, 1202-06). Nor could she consider Plaintiff's own statements about his condition since he waived his right to testify in connection with his first application for disability benefits. *See, e.g., Goins v. Colvin*, 764 F.3d 677, 680 (7th Cir. 2014) (criticizing ALJ's reliance on non-examining physician's conclusions that were based on an incomplete medical record). Dr. Rausch also was unaware of Plaintiff's meralgia paresthetica diagnosis. The ALJ admitted that Dr. Rausch did not have the full record but said her opinion was nonetheless "supported by the full hearing level record." (R. 23-24). This conclusion is based largely on Plaintiff's "improvement following his surgeries and therapy" without proper consideration of his ongoing problems with CRPS. (R. 24). It is true that a second consultative examiner, Seth Osafo, M.D., found Plaintiff to have no functional limitations at all in January 2016, but the ALJ gave that opinion little weight because it appeared to

be an "overestimate of [Plaintiff's] ability to function." (R. 590). And a third examiner, Stuart A. Rubin, M.D., prepared a report agreeing with Dr. Fernandez's assessment on May 8, 2016. (R. 698).

Viewing the record as a whole, the ALJ did not provide a logical bridge between the evidence and her decision to reject Dr. Fernandez's opinions concerning the effects of Plaintiff's CRPS. The case must be remanded for further consideration of this issue.

### 2. Remaining Arguments

The Court does not find any specific error with respect to Plaintiff's remaining arguments but the ALJ should take the opportunity on remand to reassess Plaintiff's RFC and his statements regarding the limiting effects of his symptoms. The Court notes, for example, that the ALJ discounted Plaintiff's testimony in part because he did not have atrophy, changes to the skin, warmth, mottling, or changes in distribution of hair on his arm. (R. 18). Yet no doctor opined that such factors bear on the severity of Plaintiff's pain. *See, e.g., Moon v. Colvin*, 763 F.3d 718, 722 (7th Cir. 2014) (ALJs should "rely on expert opinions instead of determining the significance of particular medical findings themselves.").

### CONCLUSION

For the reasons stated above, Plaintiff's request to reverse or remand the ALJ's decision is granted, and the Commissioner's motion for summary judgment [19] is denied. Pursuant to sentence four of 42 U.S.C. § 405(g), the ALJ's decision is reversed, and this case is remanded to the Social Security Administration for further proceedings consistent with this opinion.

ENTER:

Dated:  January 19, 2021

_____
SHEILA FINNEGAN
United States Magistrate Judge